**Dolly Herlinda DONES, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

No. 03–1004.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Jan. 12, 2004.

Decided Jan. 14, 2004.

Carlos A. Ferrer, Guttenberg, NJ, for Petitioner.

Emily A. Radford, Allen W. Hausman, Lyle D. Jentzer, Aviva L. Poczter, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before SLOVITER, RENDELL and ALDISERT, Circuit Judges.

### OPINION OF THE COURT

SLOVITER, Circuit Judge.

Petitioner Dolly Herlinda Dones, a citizen of Ecuador, appeals from the BIA's order of departure predicated on the denial by the Immigration Judge ("IJ") of petitioner's request for a section 216(c)(4) waiver, 8 U.S.C. § 1186a(c)(4). We have jurisdiction to hear this appeal pursuant to 8 U.S.C. § 1105a (1994) (codified as amended at 8 U.S.C. § 1252). Because we find that the IJ did not abuse her discretion in denying the petition for waiver, we will affirm the order of the BIA.

### I.

Dones entered the United States in 1989 as a nonimmigrant visitor, and on April 15, 1991, married Auriel Dones Jr., who is a United States citizen. As a result of her marriage, petitioner's status was adjusted to lawful permanent resident on a conditional basis pursuant to 8 U.S.C. § 1186a. Under the applicable statute, when an alien obtains permanent resident status based on marriage within 24 months of that marriage, the alien spouse is conditionally admitted for a two-year probationary period. 8 U.S.C. §§ 1186a (a)-(d) (1994). Within 90 days of the expiration of the probationary period, the couple must

jointly file a petition with the INS requesting removal of the conditional status, stating that the marriage is bona fide and has not been annulled or terminated, and must appear for an interview before an INS officer. 8 U.S.C. §§ 1186a(c)-(d) (1994). In the event that such joint filing is no longer possible, it can be waived "in the Attorney General's discretion ... if the alien demonstrates that ... (B) the qualifying marriage was entered into in good faith by the alien spouse, but the qualifying marriage has been terminated (other than through the death of the spouse)...." 8 U.S.C. § 1186a(c)(4)(B).

In September 1993, Dones filed a Petition to Remove the Conditions on Residence and requested a waiver of the joint filing requirement, pursuant to 8 U.S.C. 1186a(c)(4)(A) and (B) (1994). She was interviewed by the District Director on December 13, 1993, and her permanent resident status was terminated on April 18, 1994, because she failed to satisfy the Attorney General that her marriage was bona fide.

The INS instituted deportation proceedings in June 1994 under 8 U.S.C. § 1251(a)(1)(D) (1994) (recodified at 8 U.S.C. § 1227(a)(1)(D) (2002)), providing for the removal of immigrants whose conditional status has been terminated. The proceedings were remanded to the District Director because Petitioner had obtained a divorce on September 26, 1994. On November 17, 1995, the District Director again denied Petitioner's application to remove the conditional basis of her permanent resident status because she failed to satisfy the good faith requirement for marriage. At a hearing on April 17, 1998, the IJ found that Dones had failed to establish her eligibility for a waiver of the requirement to file a joint petition for the removal of her conditional status, and Dones was granted voluntary departure until October 19, 1998.

While no appeals may be sought from the discretionary denial of a waiver by the INS, an alien may seek review of denial of the waiver within the context of deportation proceedings. Because the denial of such waiver is discretionary, we must limit our review to an abuse of discretion, and because there was no opinion from the BIA, we review the decision of the IJ. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir.2002) (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 549 n. 2 (3d Cir.2001)).

Dones argues that the IJ erred in finding that she had not entered into the marriage in good faith, and further argues that the IJ erred in making an adverse credibility finding regarding Dones' testimony. For reasons that follow, we will affirm.

## II.

The applicable statutes, which have been amended in the long interim between the initial removal proceedings and this appeal, arose out of the Immigration Marriage Fraud Amendments enacted in 1986 to stem fraud perpetrated in connection with spousal visa petitions.

### A. Adverse Credibility

The statute for judicial review of deportation orders applicable at the relevant time states, "An order of deportation ... shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations." 8 U.S.C. § 1105a(c) (1994).[1] We have noted that "[t]his provision precludes review

---

1. The current statute also similarly provides that "[a] court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1) (2000).

when there is no appeal to the Board.... It also bars consideration of particular questions not raised in an appeal to the Board." *Alleyne v. United States Immigration and Naturalization Serv.*, 879 F.2d 1177, 1182 (3d Cir.1989) (citations omitted). Because Petitioner failed to challenge the IJ's adverse credibility ruling before the BIA, Dones cannot do so here.

We note in passing that there is nothing in the IJ's opinion suggesting that she made an adverse credibility finding. Instead, the IJ explicitly states that she is denying the petition for waiver because the weight of the evidence did not fall on Dones' side. *See* A.R. at 50, 54 and 55. Inasmuch as Dones failed to exhaust the adverse credibility issue and because the IJ never made an adverse credibility determination, we will not review that issue.

*B. Whether the evidence established that Dones entered the marriage in good faith*

In determining whether an alien spouse entered into a marriage in good faith, "the INS considers the degree of commitment to the marriage by both parties, including any documentation concerning their combined financial assets and liabilities, the length of time during which they cohabited after the marriage and after the alien obtained conditional permanent resident status, and any other relevant evidence." *Nyonzele v. Immigration and Naturalization Serv.*, 83 F.3d 975, 980 (8th Cir.1996) (citing 8 C.F.R. § 216.5(e)(2)). "The Court will uphold the agency's findings of fact to the extent that they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Gao*, 299 F.3d at 272 (quotation marks and citation omitted).

We turn first to the issue of Dones' combined financial assets and liabilities.

Dones submitted evidence of an IRA account she opened at Citibank under the name "Dolly Jones." Jones is neither her surname, nor her married name, and so the probative value of this documentary evidence is unclear, particularly because she opened this account before she was married. What is clear is that Dones never added her husband to this account as a dependent or a beneficiary. In testimony, Dones admitted that they never filed tax returns jointly, opened joint bank accounts, or owned property together. While Dones is correct in asserting that she had no legal obligation to file a joint tax return, the complete absence of commingled finances undermines a showing that Dones and her husband intended to create a life together.

We turn to the issue of cohabitation. Dones lived in North Bergen, New Jersey since arriving in the United States in November 1989. Dones contends that Auriel came to live with her in New Jersey after their wedding, despite having a job in Hicksville, Long Island. Dones was reluctant to summon Lupe Intriago, her landlady throughout her stay there, because Dones "left Ms. Intriago's house after she fell in the house and was injured, and Ms. Intriago was afraid that [Dones] would sue her." Pet. Br. at 11. Notwithstanding Intriago's reluctance to testify, she submitted an affidavit stating that she considered Dones' marriage to be in "good faith." However, in that affidavit she did not attest to the couple having lived together during the period Dones leased the apartment. App. at 186. Given that there is no record of cohabitation, we find this omission from Intriago significant, as did the IJ.

The petitioner's brief itself makes the couple's living situation unclear. It states that as a sales representative, Auriel was working elsewhere and would leave for

periods of time up to a week. He also stated that he was taking care of his father's house in Far Rockaway, Queens. Furthermore, there is no record that Auriel ever filed a change of address. This record of cohabitation makes the IJ's conclusion reasonable, particularly when combined with their separate finances. Moreover, the record shows that Auriel was incarcerated in September 1991, and after this, Dones' contact with him was minimal. In April 1992, Dones enlisted in the United States Army Reserves. She was discharged seven months later for medical reasons.

Although the couple's failure to live together after Auriel's arrest and subsequent incarceration does not evidence the character of their marriage, Dones' actions toward her husband during and after this period does. She admitted that she never attended his hearings, and that after obtaining her green card in November 1991, she never made an effort to write to him, send him money, physically see him, or contact him. She did send him a Christmas card in early 1993, but the card was postmarked in mid-January and was returned to her because, unbeknown to her, her husband had been transferred from a prison in Long Island to somewhere upstate. One could reasonably conclude that Dones' conduct toward Auriel soon after their wedding does not evidence a deep affection or connection on Dones' part.[2]

Dones submitted three photographs of herself and her husband taken during the wedding as evidence, photos the IJ found were "carefully posed" and "somewhat staged." Even if we were to agree with

Dones' counsel that wedding photos are generally posed, the IJ stated that the parties agree that the issue is, as the BIA has stated elsewhere, "whether the bride and groom intended to establish a life together at the time they were married." Citing *Matter of Laureano*, 19 I & N Dec. 1, 2–3, 1983 WL 29913 (BIA 1983). That there was a wedding is not at issue; why the wedding happened is. Had pictures been taken of the couple at their joint residence, while on a joint outing, or in some more casual setting they might have been probative of the bona fide quality of their union. But that does not mean that their conduct thereafter should not be considered as showing light on that intent. There is evidence that could have led the IJ to a contrary conclusion. For example, Dones did list her husband as her nearest relative on her discharge form from the military. Nonetheless, in light of what appears to be Dones' general disinterest in her husband after she received her green card and the absence of any evidence of a shared life together, we cannot hold that the IJ's conclusion was not supported by substantial evidence.

The IJ rendered a commendably comprehensive oral decision that detailed and evaluated each piece of evidence submitted by Dones. The IJ found that "[i]n this case ... the record is obvious for what it is wanting and what it is lacking is any evidence that the court can find of a true love match, or, for that matter, of a match made for reasons other than the green card." A.R. at 54. Because this conclusion is supported by substantial evidence, the IJ did not abuse her discretion in

---

2. The IJ found "preposterous" Dones' testimony that "they didn't live together after her husband's discharge from prison only because the parole board wouldn't allow that.... Everybody knows that all a person has to do is ask the parole board for authorization to go here or there, and there is absolutely no evi-

dence that any kind of request was ever made." A.R. at 53. Even if Dones was not part of the "everybody" who "knows" that authorization is easy to come by, that does not alter the fact that Dones made no attempt to live with her husband after he was released on parole.

denying Dones' application for a waiver of the joint filing agreement and ordering voluntary departure.

## III.

For the reasons set forth, we will deny the petition for review.

